UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM WESTBROOKS

                    Plaintiff,


            v.                                          **DECISION AND ORDER**
                                                        11-CV-994S

CITY OF BUFFALO, CITY OF BUFFALO
POLICE DEPARTMENT, and TIMOTHY DUFFY,

                    Defendants.


        1.      In this action, which was removed to this Court from state court on November

18, 2011, Plaintiff, William Westbrooks, asserts substantive causes of action for false

arrest, negligent supervision, and infliction of emotion distress against the City of Buffalo

and a City of Buffalo Police Officer, Timothy Duffy. Westbrooks also asserts a concomitant

federal cause of action under 42 U.S.C. § 1983 for false arrest.

        Defendants now move for summary judgment on each of Westbrooks' claims.  For

the following reasons, that motion is granted with respect to claims for emotional distress,

loss of income, negligent supervision, and punitive damages against the City; it is denied

with respect to Westbrooks' claims for false arrest and punitive damages against Officer

Duffy.

        2.      Under Rule 56 of the Rules of Civil Procedure the court can grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact."

A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

3.      Before proceeding to the merits of Defendants' motion, this Court must address their deficient statement of facts. Local Rule of Civil Procedure 56 provides that "[u]pon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." It further provides that "[e]ach statement by the movant or opponent pursuant to this Local Rule must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(e)" and that "[c]itations shall identify with specificity the relevant page and paragraph or line number of the authority cited."

In clear violation of that rule, Defendants statement is devoid of citation to the record. This "may constitute grounds for denial of the motion." L. R. Civ. P. 56(a)(1). Defendants' counsel did, however, submit an affidavit in which he recounts the relevant facts, with largely accurate citations to the record. (Docket No. 26.) In exercising its inherent discretion in enforcing the Local Rules (and given the relatively straightforward nature of the facts in this case), this Court finds it expedient to utilize the affidavit in place

of a proper statement of facts. But Defendants are cautioned to closely adhere to the Local Rules in future submissions to this Court.

    4.    Drawing from that affidavit and Westbrooks' responsive statement of facts (referred to as "Pl.'s Stmnt."), the following facts appear to be undisputed.

At approximately 7:00 a.m. on March 29, 2011, Westbrooks entered the Tim Horton's franchise located on the corner of Main and Court Streets in downtown Buffalo. (Pl.'s Stmnt., ¶ 1.). He did not purchase anything. (Id., ¶ 2.)  After Westbrooks had been in the coffee shop for close to an hour, Officer Duffy, assigned to patrol that area of downtown Buffalo and with orders from his superiors to "keep that corner clear in lieu of high traffic and possible illegal activity" entered the Tim Horton's and informed Westbrooks that he would either have to buy something or move outside. (Osher Aff., ¶¶ 10–11.) Westbrooks heeded that directive, left the establishment, and rested on a large cement "planter" near the Tim Horton's entrance. (Id., ¶ 12). Officer Duffy, following him outside, told Westbrooks that he could not sit there, and according to Defendants, asked him to move. (Id., ¶¶ 13–14; Pl.'s Stmnt. ¶ 9.) Westbrooks, however, contends he was not asked to move. In any event, Westbrooks then explained to Officer Duffy that he was waiting to go to a job interview downtown; Duffy called his partner to assist him, asked for Westbrooks' ID, and arrested him in short order. (Pl.'s Stmnt. ¶10.)

    5.    Westbrooks asserts that he was falsely arrested. To state a claim for false arrest under either New York or federal law, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995) (internal marks

omitted). "An officer generally has probable cause to arrest when he or she, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person being arrested." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (internal quotation marks and citation omitted). Defendants improbably argue that based on these facts, Officer Duffy had probable cause to arrest Westbrooks.

6.      Defendants appear to rest this argument on the *disputed* fact that Westbrooks refused to obey Officer Duffy's order. But the parties paint conflicting versions of the events that morning. Westbrooks contends that he was never asked to move from the planter. If true – and it is not this Court's role to weigh the evidence and determine the truth of the matter – Westbrooks did not disobey an order, and the premise for Defendants' argument falls away. This alone precludes summary judgment. See, e.g., Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987) ("Since [plaintiff] claims that [Defendant-officer] said nothing at all to him at the relevant time, let alone something that could be construed as an order, under the facts as we must take them at this stage of the case, there was no probable cause for an arrest for disobeying a police officer's order."). This is true for both the state and federal false-arrest claims. Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007) ("If . . . on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims.").

7.      Further, Defendants can offer no authority for the erroneous  proposition that failure to follow a police officer's order – regardless of the lawfulness of or justification for

that order – is in itself a violation of the law. Defendants must point to some crime Westbrooks committed or was committing – or at least that the officer had probable cause to believe he committed or was committing. See Valentine, 539 F.3d at 93; Singer, 63 F.3d at 118 (2d Cir.1995) (element of false-arrest claim is that the arrest be "not otherwise privileged").

8. Although disobeying an officer's order may constitute a crime under New York Penal Law § 195.00, which prohibits "obstruction of governmental administration," New York courts have held that the official function being performed must be one that is "authorized by law." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995). Even considering that Officer Duffy had orders from his superiors to "keep that corner clear in lieu of high traffic and possible illegal activity," Defendants do not adequately explain how the order in question here was "authorized."[1] Of course, internal police orders lack the necessary force of New York's penal law.

9. To the extent that Defendants argue that Officer Duffy had probable cause to arrest Westbrooks for disorderly conduct, it is plain that under Westbrooks' version of the events, no reasonable officer could have believed he committed that crime. Under New York Law:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

---

[1] It is not even clear that Westbrooks had to leave the Tim Horton's. Although that establishment had a sign instructing patrons to leave after 20 minutes, a person is guilty of trespass only if "regardless of his intent," he "enters or remains in or upon premises which are at the time open to the public" and "defies a lawful order not to . . . . remain, *personally communicated to him by the owner of such premises or other authorized person.*" N.Y. Penal Law § 140.00(5) (emphasis added); see Bang v. Utopia Rest., 923 F. Supp. 46, 49 (S.D.N.Y. 1996) ("It is not unlawful to enter or remain in a restaurant that is open to the general public unless one 'defies a lawful order not to enter or remain, personally communicated by the owner of such premises or other authorized person.'"). Further, even if the 20-minute sign were relevant, there is no indication that Officer Duffy knew how long Westbrooks was inside the coffee shop.

1. He engages in fighting or in violent, tumultuous or threatening behavior; or
2. He makes unreasonable noise; or
3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
5. He obstructs vehicular or pedestrian traffic; or
6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

N.Y. Penal Law § 240.20

Under Westbrooks' version of the events, he was dressed in business attire, awaiting an interview, engaging in no suspicious activity, and resting on planter after following an officer's order to exit Tim Horton's. This set of circumstances does not begin to suggest that Westbrooks was "inten[ding] to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." See id. In fact, even under Defendants' version of the events, it is hard to imagine how an officer might believe that Westbrooks committed this crime. Although, according to Defendants, he disobeyed an order, there is scant indication that the order to move from the planter was a *lawful* one, and he was not "congregat[ing] with other persons." See N.Y. Penal Law § 240.20(6). Defendants' motion on this ground is therefore denied.

10. Defendants also include a section of their brief dedicated to the fact that Westbrooks eventually received an "adjournment in contemplation of dismissal," or ACD, in connection with his arrest. Their point heading reads, "The Adjournment in Contemplation of Dismissal does not support a false arrest or false imprisonment claim." (Def.'s Br. at 6; Docket No. 24-1.) But while an ACD, which "is an adjournment of the action

6

without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice," N.Y. Penal Law § 170.55, may prevent a plaintiff from bringing a malicious-prosecution claim because it is not a so-called "favorable termination," such a favorable judicial result is not an element of a false-arrest claim. <u>Weyant v. Okst</u>, 101 F.3d 845, 853 (2d Cir. 1996) ("[U]nder New York law, while the favorable termination of judicial proceedings is an element of a claim for malicious prosecution, it is not an element of a claim for false arrest."); <u>see also</u> <u>Freedman v. Monticello Police Dep't</u>, No. 01 CIV. 0119 (NRB), 2003 WL 135751, at *3 (S.D.N.Y. Jan. 17, 2003) ("A valid ACD is not an adequate basis for defendants' motion to dismiss the federal false arrest claim."). In short, this fact has no bearing on this Court's analysis, and thus does not change the result reached above.

11.    In the alternative, Defendants appear to argue that Officer Duffy is protected by qualified immunity. Although they cite relevant law, Defendants fail to apply the law to the facts of this case. This alone is reason to dismiss the argument. <u>See, e.g.</u>, <u>Blissett v. Coughlin</u>, 66 F.3d 531, 538 (2d Cir.1995) ("[B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings . . . .").

12.    But even if this Court were to consider this contention on its merits, it would find that Duffy is not protected by qualified immunity.

The doctrine of qualified immunity shields government actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). It provides that even

if probable cause for an arrest is lacking, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause,'" which exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (citations omitted). This test "is more favorable to the officers than the one for probable cause." Id.

13.    Based on the rationale outlined above, this Court finds that, especially under Westbrooks' version of the events, arguable probable cause was lacking.  Again, according to Westbrooks, he was arrested for engaging in entirely innocuous behavior. This is not cause for arrest, and no reasonably competent officer – even with orders to keep the corner "clean"[2] –  could have concluded otherwise. See, e.g, Zellner v. Summerlin, 494 F.3d 344, 371—77 (2d Cir. 2007). Defendants' motion on this ground is accordingly denied.

14.    Defendants also move to dismiss Westbrooks' claim for infliction of emotional distress.

To sustain a cause of action for infliction of emotional distress, a plaintiff must plead and show, among other elements, that he was the victim of "extreme and outrageous conduct." Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993). The requirements of this rule are "rigorous, and difficult to satisfy." Id. (citing William Prosser & W. Page Keeton, Torts, § 12, 60-61 (5th ed. 1984)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

---

[2]Even Officer Duffy testified that he believed he had discretion to allow people to remain on that corner or order them to leave. (Duffy Dep. Tr., at 22:3–22.)

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 81 N.Y.2d at 121 (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983).

As an initial matter, the New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available. Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing Fischer v. Maloney, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978)). And "state courts and federal district courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." Brewton v. City of New York, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008); see also Sepulveda v. City of New York, No. 01 CIV. 3054 (DC), 2003 WL 21673626, at *6 (S.D.N.Y. July 17, 2003). This is true whether the claim is for intentional or negligent infliction of emotional distress. Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005).

If there were any doubt about Westbrooks' ability to bring an emotional-distress claim based on facts that also comprise his false-arrest claim, the conduct complained of is clearly not sufficiently "outrageous" to satisfy the necessary elements of his claim. And, beyond cursory allegations in his complaint, Westbrooks provides no evidence of any emotional harm. Any emotional-distress claim is accordingly dismissed.

15.    Plaintiff also asserts a claim under New York state law against the City of Buffalo for negligent training or supervision.  For similar reasons, this claim too must be dismissed because "under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the

appropriate degree of care in effecting an arrest or initiating a prosecution." Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994). In such a situation, "New York law does not recognize a claim for negligent supervision." Hicks v. City of Buffalo, 124 F. App'x 20, 25 (2d Cir. 2004).

Morever, even if Westbrooks could assert this claim, to establish a cause of action based on negligent hiring and supervision, he must raise some issue of fact that suggests that "the employer knew or should have known of the employee's propensity for the conduct which caused the injury." Jackson v. N.Y. Univ. Downtown Hosp., 69 A.D.3d 801, 801 (2d Dep't 2010). Westbrooks makes no allegations, nor provides any evidence, to support such a claim. Defendants' motion on this ground is therefore granted.

16.     Any claim for punitive damages against the City of Buffalo must also be dismissed. Municipalities are immune from punitive damages for claims brought under (1) § 1983 and (2) state law under a theory of vicarious liability. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258–71, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (discussing § 1983); Mason v. City of New York, 949 F. Supp. 1068, 1072 (S.D.N.Y. 1996) (discussing state law). With the dismissal of Westbrooks' negligent supervision and training claim, there is no claim that  the City itself was negligent. Thus, there is no basis for a punitive damages award against the City.

17.     Defendants also apparently seek to dismiss Westbrooks' punitive damages claim as asserted against Officer Duffy in his personal capacity. In that capacity, Officer Duffy does not enjoy the immunity of a municipality. But, while Defendants recite some case law that is relevant to a claim for punitive damages, they make no actual argument

that this claim should be dismissed.[3] Without it, this Court will not dismiss the claim at this time.

18.    Finally, Defendants seek to dismiss Westbrooks' claim for loss of income. This claim is presumably premised on the fact that Westbrooks' arrest caused him to miss a job interview.

As Defendants note, "[i]t is the plaintiff's burden to establish his own loss of 'actual' past earnings with 'reasonable certainty' – e.g., by submitting tax returns and/or other relevant documentation." Papa v. City of New York, 194 A.D.2d 527, 531, 598 N.Y.S.2d 558 (2d Dep't 1993). Here, Westbrooks has presented no such evidence. In fact, he bases his claim on the purely speculative proposition that, but for the arrest, he would have made it to his interview and been hired. He points to no facts that raise this presumption above the speculative level. New York law requires more. See id.; Wang v. Yum! Brands, Inc., No. 05-CIV-1783JFBMDG, 2007 WL 1521496, at *5 (E.D.N.Y. May 22, 2007) ("[I]t is well settled under New York law that the plaintiff's uncorroborated testimony as to the amount of lost past or future wages cannot, as a matter of law, satisfy the 'reasonable certainty' standard."). Therefore, any claim for lost income is dismissed.

---

[3]This, in addition to Defendants' failure to follow a fundamental provision of the Local Rules, their borderline frivolous argument regarding probable cause, their failure to make any argument whatsoever with respect to Officer Duffy's potential immunity, and their all-but misleading discussion of the adjournment in contemplation of dismissal, all amount to near-sanctionable conduct. The City is forewarned that continued litigation in this manner may result in the imposition of sanctions.

****

IT HEREBY IS ORDERED, that Defendants' motion for summary judgment (Docket

No. 24) is GRANTED in part and DENIED in part.


Dated:   January 26, 2014
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court